1
2
3
4
5
6
7
8       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
                AT SEATTLE
9

10  DEBRA A. JASPER,

11                          Plaintiff,              No.  C07-790Z

12  v.
                                                    ORDER
13  MICHAEL J. ASTRUE, Commissioner of
    Social Security,
14
                            Defendant.
15

16
        THIS MATTER comes before the Court on appeal from a final decision of the
17
Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff
18
Debra Jasper's application for Disability Insurance Benefits ("DIB") and Supplemental
19
Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42
20
U.S.C. §§ 401-433 and 1381-1383f.  Having reviewed all papers filed in support of and in
21
opposition to the appeal, the Court does hereby ORDER:
22
        (1)    The Commissioner's decision denying DIB and SSI benefits to plaintiff is
23
               REVERSED;
24
        (2)    This matter is REMANDED for an AWARD of benefits to plaintiff; and
25
        (3)    The Clerk shall send a copy of this Order to all counsel of record.
26


ORDER   1–

**Background**

Plaintiff was born on January 2, 1960, and is currently 48 years old. AR 1440. She completed high school and two or three years of post-secondary education, obtaining an Associate in Arts degree. AR 975; AR 1440; AR 1450. Plaintiff previously worked as a certified nurse aide, home health aide, unit clerk, and certified medications aide. AR 16; AR 1450. Plaintiff has not engaged in substantial gainful activity since July 1, 1999, the date on which she alleges onset of her disabilities. AR 993 at ¶ 2; see AR 626 n.1. The Commissioner has determined that plaintiff suffers from the following severe impairments: fibromyalgia, a depressive disorder, anxiety disorder, and personality disorder. AR 993 at ¶ 3.

In May 2000, plaintiff filed applications for DIB and SSI payments. AR 120-22; AR 571-76. In May 2002, Administrative Law Judge William Rima III found plaintiff ineligible for DIB or SSI payments because substance abuse was a material factor contributing to her disability. AR 15-26. In April 2004, this decision was reversed by the United States District Court for the District of Kansas because ALJ Rima failed to consider the opinion of one of plaintiff's treating physicians, namely Susan Brewer, M.D. AR 636-61. The matter was remanded for further proceedings. AR 636; AR 660. During the interim, plaintiff moved to Washington, and subsequent hearings were conducted in Seattle. In August 2005, Administrative Law Judge M.J. Adams also found plaintiff ineligible for payments, concluding that plaintiff was not disabled because she had the requisite residual functional capacity to perform the full range of light work, with some mental limitations, and a significant number of jobs exist in the national or regional economy that plaintiff could perform.[1] AR 624-35. Upon stipulation of the parties, in March 2006, this decision was also

---

[1] ALJ Adams disagreed with ALJ Rima's conclusion that plaintiff was addicted to narcotics because such medications had been prescribed for pain management. AR 629. ALJ Adams found that any substance abuse disorder plaintiff might have was in remission and that it did "not significantly limit the claimant's ability to engage in work-related activities." Id.

ORDER   2–

reversed, this time by the United States District Court for the Western District of Washington. Order (docket no. 9) in *Jasper v. Barnhart*, Case No. C05-2008-RSL-MJB (reprinted at AR 1002-03). The case was remanded with specific directions, including obtaining a "physical consultative evaluation" regarding plaintiff's fibromyalgia, which had previously been deemed "not severe," and if warranted, obtaining supplemental evidence from a vocational expert. *Id.*

After conducting an additional hearing in November 2006, ALJ Adams again found that plaintiff is not disabled because, even if plaintiff could perform only sedentary work, she still had the residual functional capacity to operate as a telephone information clerk or a telephone order clerk, which are jobs available in quantities of 1,000 positions regionally and 25,000 or 35,000 positions, respectively, nationally. AR 990-97. ALJ Adams also incorporated by reference the two earlier decisions in this matter. AR 992. For purposes of 42 U.S.C. § 405(g), concerning judicial review, the ALJ's ruling became the "final decision" of the Commissioner by operation of 20 C.F.R. §§ 404.984(d) & 416.1484(d), which apply to Title II and XVI claims, respectively, and which both read: "If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand" from a federal court.

**Discussion**

**A.    Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b); *see also* 20 C.F.R. § 404.1572 (defining substantial gainful activity as significant physical or mental activities done or usually done for pay or profit). If so, the claimant is not entitled to

disability benefits, and no further evaluative steps are required.  Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  If not, the claimant is not entitled to disability benefits, and again, additional analysis is not required.  Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f).  If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there.  On the other hand, if the opposite conclusion is reached, the burden shifts to the Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(g) & 416.920(g).  If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence.  _Tidwell v. Apfel_, 161 F.3d 599, 601 (9th Cir. 1998); _see_ 42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla but less than a preponderance of evidence; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  _Lingenfelter v. Astrue_, 504 F.3d 1028, 1035 (9th Cir. 2007).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must review the administrative record as a

ORDER   4–

whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Court may not affirm simply by isolating a specific quantum of supporting evidence. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If, however, the evidence reasonably supports both affirming and reversing the denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720; *see also* *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

**B.     Issues on Appeal**

In this matter, plaintiff does not challenge the determinations under steps one, two, and four, namely that plaintiff has not engaged in substantial gainful activity since July 1, 1999, that some of her impairments are severe, while others are not, and that she cannot perform past relevant work. AR 634 at ¶¶ 2 & 3; AR 993 at ¶¶ 2 & 3; AR 996 at ¶ 6. Plaintiff, however, assigns error to the ALJ's conclusion under step three that none of her impairments are equivalent to one that is listed in the regulations; plaintiff asserts that her depressive disorder should be considered a per se disability. In addition, with regard to the analysis under step five, plaintiff contends that the ALJ improperly assessed her residual functional capacity by (i) inappropriately discounting the opinions of treating and examining physicians, (ii) incorrectly discrediting plaintiff's testimony, (iii) ignoring the effect of plaintiff's fibromyalgia, and (iv) relying on the allegedly flawed testimony of the vocational expert.

     **1.     ALJ's Analysis Under Step Three**

To qualify as a per se disability, an affective disorder like depression must satisfy either both the "A" and "B" criteria or the "C" criteria described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 [hereinafter "Listing"]. *See* Listing

ORDER   5–

at § 12.04. The ALJ determined that plaintiff's mental impairment meets the "A" criteria,[2] but not the "B" or "C" criteria, AR 629-30, and that plaintiff's depression was therefore not a per se disability. The "B" standard requires that two of the following results flow from the mood disturbance at issue:

1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

Listing at § 12.04. The "C" test inquires whether the claimant has a medically documented history of a chronic affective disorder of at least two years in duration that "has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," as well as one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing at § 12.04. The ALJ found that plaintiff's depressive disorder caused only mild restrictions in her activities of daily living, mild limitations in her social functioning, and moderate limitations in her concentration, persistence, and pace. AR 629. The ALJ further found that plaintiff had suffered no episodes of decompensation. *Id.*

In reaching these determinations, the ALJ discounted the opinion of plaintiff's treating psychiatrist Dr. Brewer, who had concluded in January 2002 that plaintiff's affective disorder satisfied the requirements of a listed impairment. AR 629 (citing Exh. 25F, which

---

[2] A person satisfies the "A" criteria for an affective disorder if he or she has a "[m]edically documented persistence, either continuous or intermittent," of depressive, manic, or bipolar syndrome, as further defined in the regulations. Listing at § 12.04.

ORDER  6–

appears at AR 494-96). The ALJ perceived that Dr. Brewer's assessment was contradicted by the evidence in the record, which indicated that the limitations plaintiff was suffering were due more to her physical ailments than to her mental condition. For example, the ALJ attributed plaintiff's need for assistance with cooking and household chores to her physical impairments rather than any depressive state. AR 629 ("claimant did not allege that she needed this help because of her mental health complaints"). Having segregated plaintiff's physical and mental health issues in this manner, the ALJ stated that plaintiff's restrictions on the activities of daily living were "not appropriate to consider." AR 629. Moreover, the ALJ ascribed plaintiff's inability to use public transportation to the exertional demands involved rather than to any mental impairments. AR 630 (claimant did not express concern "with the exposure to people"). Having again compartmentalized plaintiff's physical and mental difficulties, the ALJ found that plaintiff had "only mild limitations in her social functioning," relying as well on evidence that plaintiff lived with her daughter and grandson for some period in 2001, had a "best friend" who helped her with cooking, referred to a "sister friend" who helped her with errands and driving, and traveled to Louisiana in August 2003. AR 629-30.

The Court concludes that the ALJ committed an error of law. The Listing requirements for a mental impairment are divided into diagnostic standards ("A" criteria) and functional restrictions ("B" criteria). *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). A claimant must be found disabled if his or her impairment *or combination of impairments* meets or equals the diagnostic and functional criteria of a listed mental impairment. 20 C.F.R. § 404.1520(d). In analyzing a combination of impairments, the Commissioner may not fragmentize their effects. *Lester*, 81 F.3d at 829. Whether symptoms result solely from a mental impairment or from a combination of mental and physical impairments has no relevance; the question is whether, "*taken together*," the combination of impairments is

ORDER  7–

equivalent in severity to an impairment described in the Listing. *Id.* at 829-30 (emphasis in original).

In setting forth this standard, the Ninth Circuit has recognized that physical and mental impairments may be "inextricably linked" and that "[p]ain merges into and becomes a part of the mental and psychological responses that produce" functional restrictions. *Id.* at 829. Indeed, in this case, although plaintiff's impairments were initially primarily physical, they have evolved into a complex interplay of physical and mental symptoms. In 1990, plaintiff injured her back while working as a nurse aide. AR 341; AR 347. She suffered an additional back injury in 1993, and was involved in a car accident in 1997, while in transit from Seattle to Wichita. AR 341. Sometime after the initial back injury, plaintiff developed the symptoms of fibromyalgia, which include chronic widespread pain and tenderness to light touch. In October 1997, plaintiff applied for DIB and SSI benefits, but her request was denied in June 1998.[3] AR 624. After plaintiff again applied for benefits in May 2000, she was seen by an examining psychologist, Bruce Nystrom, Ph.D., who opined that plaintiff's physical and mental limitations were related. *See* AR 348 ("The depression and anxiety that she lists as being causes of her disability seem to be clearly related to the pain she is experiencing from her physical problems and the limitations the physical problems place upon her everyday activities."). More recently, in connection with the stipulated remand for further proceedings, plaintiff was examined by Reiko Johnson, M.D., who observed that plaintiff experienced tenderness, which varied from achy and sore to painful, in every musculoskeletal region that was palpated and confirmed the diagnosis of fibromyalgia. AR 1364-65.

In her most recent testimony, plaintiff described being unable to get out of bed on certain days, but she explained that it was "because of the pain and not being able to walk

---

[3] Plaintiff has moved to reopen her previously adjudicated claim. The Court finds no basis for doing so and DENIES the request.

ORDER   8–

because of [her] hip and [her] leg giving out." AR 1445. She further stated that "[s]imple things like reaching up in a cupboard getting a glass can send pain all through [her] neck and shoulders, down into [her] spine." *Id.* She needed "help just putting on a pair of shoes," and some days, if she was "having spasms real bad," she couldn't "even put them on." *Id.* In previous testimony, plaintiff described feeling anxious while in public because she was afraid someone would bump into her, causing pain, or she might fall. AR 978. Consistent with plaintiff's expressed concerns, her medical records indicate persistent episodes of falling, once caused simply by her grandson hugging her, another by the wind, and others by her leg collapsing. AR 439; AR 459; AR 500. Moreover, her psychiatric records reflect a number of personal tragedies, including the murder of her father in the early 1980s, the murder of an adoptive daughter in late 2000, and the deaths of several other family members, all of which lend credence to plaintiff's grief-based reasons for isolating herself. *See* AR 325; AR 342; AR 484; AR 1189 ("[c]lient keeps all relationships from getting too close due to her fear of being hurt by them leaving or dying"); AR 1206 ("client talked about how difficult it was to see some of her family and know which ones aren't there and the reasons why"); *see also* AR 1444. Thus, although plaintiff's chief complaints stem from her extreme physical discomfort, the mental health component cannot be minimized or ignored.

In light of the evidence in the record, the ALJ's conclusion that plaintiff's mental health impairment does not meet the requirements of Listing § 12.04 must be reversed. The ALJ's decision is based on an erroneous parsing of plaintiff's physical and mental limitations, and the ALJ's findings of only mild difficulty with daily living activities and social functioning are not supported by substantial evidence. The fact that plaintiff's need for assistance in performing household chores is rooted primarily in her physical as opposed to mental health issues does not reduce her restrictions from marked or moderate to mild.

ORDER  9–

Likewise, the fact that plaintiff's reason for isolating herself stems both from physical concerns, as well as emotional ones, does not change the extent or nature of her limitations.

Although the parties have not addressed the issue in their briefing, the Court recognizes that harmless error analysis applies in the social security context. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2005). The Court, however, cannot hold that the ALJ's error here was harmless because it was of consequence to the ultimate non-disability determination. *See id.* at 1055. Moreover, if Dr. Brewer's opinion is fully credited, rather than discounted on the basis of some dichotomy between the physical and mental causes of plaintiff's limitations, the Court cannot "confidently conclude" that a reasonable ALJ would have reached the same decision to deny benefits. *See id.* at 1056. If this error were the only one committed by the Commissioner, the Court would be compelled to remand for consideration of whether plaintiff's combination of impairments meets or equals the functional requirements ("B" criteria) of Listing § 12.04. Plaintiff, however, also challenges the ALJ's analysis under step five, and her arguments have merit.

### 2. **ALJ's Analysis Under Step Five**

The ALJ concluded that plaintiff has the residual functional capacity to perform a full range of light work, meaning the ability to lift a maximum of twenty pounds and to frequently lift ten pounds, as well as sedentary work. AR 993. In making this ruling, the ALJ discounted the opinions of Chris Belcher, M.D., plaintiff's treating physician since 1992, and Reiko Johnson, M.D., who examined plaintiff in July 2006, following the stipulated remand for further proceedings. In addition, the ALJ declined to fully credit plaintiff's testimony. Finally, in analyzing whether plaintiff could successfully adjust to other work, the ALJ relied on a vocational expert's estimate regarding the number of light work and sedentary positions available in the region and nationally, but ignored without explanation certain portions of the vocational expert's testimony.

**a.** **Treating and Examining Physicians**

ORDER  10–

The Ninth Circuit has distinguished between three classes of physicians (treating, examining, and consulting) in defining the weight to be given their opinions. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is given the most weight, followed by an examining physician, and then by a consulting physician. <u>Id.</u> at 830-31. In the absence of a contrary opinion, a treating or examining physician's opinion may not be rejected unless "clear and convincing" reasons are provided. <u>Id.</u> at 830. Even if contradicted, a treating or examining doctor's opinion can only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. Moreover, the controverting opinion of a consulting (non-examining) physician does not by itself constitute substantial evidence justifying the rejection of a treating or examining doctor's opinion. <u>Id.</u> at 831.

Here, the ALJ's reasons for not giving credence to the opinions of Drs. Belcher and Johnson do not satisfy the "clear and convincing" standard. The ALJ gave "scant weight" to Dr. Belcher's opinion because one of his reports was on a check-box form and because "he endorsed the claimant's subjective complaints of severe limitations . . . without any objective basis." AR 994. In minimizing the weight of the check-box form, the ALJ cited to <u>Murray v. Heckler</u>, 722 F.2d 499 (9th Cir. 1983), and <u>Crane v. Shalala</u>, 76 F.3d 251 (9th Cir. 1996). Neither case, however, supports the proposition that a treating physician's opinion "is not entitled to much weight" simply because it is in check-box form. In <u>Murray</u>, the check-box form at issue was prepared by a non-treating physician, whose opinion contradicted that of a treating doctor. 722 F.2d at 501. The Ninth Circuit concluded that the ALJ's reliance on the check-box form supplied by the Social Security Administration failed to meet the "specific and legitimate reasons" standard for disregarding a treating physician's opinion. <u>Id.</u> at 501-02. <u>Crane</u> cited to <u>Murray</u> for the proposition that individualized medical opinions are preferred over check-off reports. 76 F.3d at 253. Here, the check-box form was completed by a treating physician, it was supplemental to (rather than in lieu of) individualized records, and it was uncontradicted. The ALJ erred in assigning it "little" or "scant" weight. AR 994.

ORDER  11–

The ALJ discounted Dr. Johnson's opinion because she did not have an opportunity to review plaintiff's records and "was forced to rely excessively on the claimant's subjectively-reported medical history." AR 995. Given the procedural posture of Dr. Johnson's opinion, which was provided pursuant to a court order requiring a "physical consultative evaluation" regarding plaintiff's fibromyalgia, the ALJ's reason for disregarding it rings hollow. The spirit, if not the explicit language, of the court order placed some accountability on the ALJ for ensuring that the examination upon remand was meaningful and helpful in assessing plaintiff's residual functional capacity. In addition, Dr. Johnson's observations do not differ substantially from those of Dr. Belcher, who the ALJ accused of endorsing plaintiff's complaints without any objective basis. Thus, what would have been gained by having Dr. Johnson pour through plaintiff's voluminous medical records remains unclear.

Giving full credit to the opinions of Drs. Belcher and Johnson, the following picture of plaintiff's residual functional capacity emerges. Plaintiff uses a cane to ambulate. AR 954. Her experience of pain is severe enough to interfere with her attention and concentration "constantly." *Id.* She can lift and carry less than ten pounds frequently, but more than ten pounds only occasionally and over twenty pounds only rarely. AR 955; AR 1366. Plaintiff could be expected to stand and walk at least two hours in an eight-hour day and to sit about six hours in an eight-hour day, although requiring periodic alternation between sitting and standing to relieve pain or discomfort. AR 1365. Her impairments are likely to produce "good days" and "bad days," with her likely rate of absence from work being "[m]ore than four days per month." AR 956.

### b. **Plaintiff's Testimony**

The ALJ viewed plaintiff's complaints with substantial suspicion. *See* AR 994 ("the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible"). The

ORDER 12–

ALJ, however, pointed to no affirmative evidence of malingering,[4] and therefore, the reasons for rejecting plaintiff's testimony must be "clear and convincing."  *See* *Lester*, 81 F.3d at 834.  In discounting plaintiff's credibility, the ALJ pointed to statements made by plaintiff to her treatment providers that appear to contradict her reports of symptoms.  These included inconsistencies concerning prior drug use and smoking, indications that she was walking more without her cane, complaints about overexerting herself while moving, and her explanation for a positive cocaine test of being slipped a "mickey."  AR 631-32; AR 995-96.  Although these discrepancies are concerning, they do not rise to the level of "clear and convincing" reasons for disbelieving plaintiff's descriptions of the pain she is experiencing.  Plaintiff's drug use appears limited to narcotics prescribed to manage her pain, her smoking pattern (quitting, then starting, then trying to quit again) is not atypical, and her attempts to walk without her cane are aimed at improving her physical condition.  Moreover, plaintiff's statements about her participation in the moving process are too vague to be probative of any lack of veracity; although plaintiff indicated that she pulled a muscle by lifting "too much," AR 860, the item and weight lifted and frequency of lifting are unknown.[5]  Finally, although

---

[4] Indeed, plaintiff was described by one examining psychologist as "a credible historian," AR 327, and her long-time treating physician, Dr. Belcher, indicated by letter dated March 8, 2005, that plaintiff had "been compliant with her care" and treatment recommendations, and that she is not malingering, AR 951.  Dr. Belcher further stated "full support" for plaintiff obtaining disability benefits, indicating that plaintiff has "received maximal medical care" and that "[h]er prognosis is poor for full recovery."  AR 951.  The Court, however, notes that a number of inconsistencies in the record provide cause for some doubt about plaintiff's veracity.  For example, plaintiff has been described as having never been married, AR 324 (June 1998), having been married for 24 years, AR 341 (January 2000), having been married for 2 ½ years, but in the same relationship for 25 years, AR 368 (September 2000), and having been married at age 15 to one man, but having children with another man, AR 1213 (November 2004).  Whether these discrepancies are due to plaintiff's lack of candor or accuracy or to the particular treatment provider's misperception or inattention to detail remains unclear.  The Court is also troubled by plaintiff's statement to her therapist that she was "planning out 'to the dime' what to do with her disability settlement."  AR 1196.  Despite these puzzling bits of information, the Court is persuaded that the ALJ's suspicions of malingering, *see* AR 995 ("those observations also raise the possibility of malingering"; "malingering was suspected"), are not supported by affirmative evidence.

[5] The ALJ made an assumption about the amount plaintiff lifted while moving and drew a conclusion therefrom concerning plaintiff's candor.  *See* AR 631-32 ("[T]he claimant had previously stated that she was unable even to do her own laundry without help. . . . , [but] [t]he claimant clearly knew that she could lift more than the amounts involved in everyday laundry, or she would not have attempted to exert herself in any manner

ORDER   13–

plaintiff's explanation for testing positive for cocaine seems unlikely, the record circumstantially supports it; plaintiff does not appear to have a history of cocaine use. Thus, plaintiff's testimony, including her account of the effects of her fibromyalgia, should have been given credit by the ALJ.

### c. Vocational Expert

In concluding that plaintiff could adjust to other work, the ALJ relied exclusively on the testimony of Susan Stewart, a vocational expert. See AR 996-97. Although the ALJ posed hypotheticals to the vocational expert that assumed a residual functional capacity to perform only sedentary work, as opposed to light work, the ALJ did not take into account the vocational expert's opinion relating to absenteeism and problems with attention and concentration. In response to the ALJ's questions, the vocational expert indicated that, with respect to the available jobs for which plaintiff had the requisite residual functional capacity, namely as telephone information clerk and telephone order clerk, missing one day per month of work would be tolerated, two days a month would pose difficulties, and "three days would preclude employment." AR 1453. In response to plaintiff's counsel's inquiry, the vocational expert opined that, in connection with the sedentary jobs at issue, if a worker had attention and concentration difficulties at a rate of one-third of the time, such problems would also "preclude employment." AR 1457.

Giving full credit to Dr. Belcher's opinion, which reflected an estimated absence rate of more than four days per month, and in light of the undisputed testimony provided by the vocational expert, the Court holds that the ALJ's step five ruling is not supported by substantial evidence. Moreover, Dr. Belcher's opinion that plaintiff experiences "constant" interference with attention and concentration leads to only one conclusion, namely that plaintiff cannot be expected to make an adjustment to other work. The ALJ's decision to the

---

while moving."). Neither the assumption nor the conclusion are supported by the record.

ORDER  14–

contrary, on an issue for which the Commissioner bears the burden of proof, is hereby REVERSED.

**Conclusion**

Because the record has been fully developed, remanding this matter for further proceedings "would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). The Court therefore REVERSES and REMANDS for an AWARD of benefits.

IT IS SO ORDERED.

DATED this 17th day of April, 2008.

Thomas S. Zilly
United States District Judge

ORDER  15–